UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RAYMOND A. SEMENTE, D.C., P.C.,

                              Plaintiff,

 - against -

EMPIRE HEALTHCHOICE ASSURANCE, INC.,
d/b/a EMPIRE BLUE CROSS BLUE SHIELD,
VERIZON           COMMUNICATIONS,           INC.,
VERIZON ADVANCED DATA INC., VERIZON
AVENUE     CORP.,     VERIZON     CORPORATE
SERVICES CORP., VERIZON NEW YORK INC.,
VERIZON   NEW   ENGLAND   INC.,   VERIZON
SERVICES CORP., EMPIRE CITY SUBWAY
COMPANY (LIMITED), COUNTY OF SUFFOLK,
SUFFOLK   COUNTY   LABOR/MANAGEMENT
COMMITTEE and THE EMPLOYEE MEDICAL
HEALTH PLAN OF SUFFOLK COUNTY,

                              Defendants.

-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:14-cv-5823 (DRH) (SIL)

**APPEARANCES**

**For Plaintiff**:
THE LAW OFFICES OF HAROLD J. LEVY, P.C.
823 Anderson Avenue
Fort Lee, New Jersey 07024
By:    Harold J. Levy, Esq.

**For Defendants / Cross Claimants:**
SUFFOLK COUNTY ATTORNEY
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099
By:    Hope Senzer Gabor, Esq.

**For Cross Defendant**:
FOLEY & LARDNER
90 Park Avenue
New York, New York 10016
By:    Robert A. Scher, Esq.
       Rachel E. Kramer, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

In an Order dated March 16, 2020, (the "Order" or "SJ Order" [DE 120][1]), the Court denied Plaintiff Raymond A. Semente, D.C., P.C.'s motion for summary judgment and dismissed the case for lack of standing.[2]  Presently before the Court is Plaintiff's motion for reconsideration and reargument pursuant to Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3 for the United States District Courts for the Southern and Eastern Districts of New York.  [DE 122].

Plaintiff is not asking the Court to examine any new legal issues or arguments. Rather, it is requesting that the Court reconsider its decision because the Court misconstrued relevant authority in light of the evidence.  Accordingly, the motion is procedurally sound and reconsideration is GRANTED.  For the reasons set forth below, however, the Court adheres to its earlier determination which DISMISSED the case for lack of standing.

## BACKGROUND

The Court assumes familiarity with its full recitation of relevant facts as set forth in the Order.  (*See* SJ Order at 3–4).  Below are the facts pertinent to reconsideration, an overview of the Order to be reconsidered, and the interim filings between the Order and this reconsideration decision.

---

[1]     The Order was published at *Robert A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*, 444 F. Supp. 3d 451 (E.D.N.Y. 2020).

[2]     Unless otherwise noted, capitalized terms used but not defined herein shall have the respective meanings set forth in the SJ Order.

## I.    Factual Background

Plaintiff is a chiropractic practice that services patients with healthcare insurance plans sponsored by Suffolk or the Verizon, both of which Empire administers.  (SJ Order at 3; Pl. 56.1 Stmt. ¶¶ 4–7 [DE 115-32]).  Plaintiff is an out-of-network provider under the plans.  (SJ Order at 3).  The plans each contain an anti-assignment provision which reads:

> Note: Assignment of benefits to a non-network provider is not permitted.

(SJ Order at 3; Pl. Reply 56.1 Stmt. ¶ 84 [DE 118-1]).  Nevertheless, Plaintiff has its patients make two contractual assignments of rights under their plans.

One assignment, titled "Assignment of Health Plan Benefits and Rights and ERISA Representative Designation," grants Plaintiff its patients' benefits:

> I hereby assign directly to Raymond A. Semente D.C.[3] all rights to payment and benefits and all legal and other health plan, ERISA plan, or insurance contract rights that I (or my child, spouse, or minor dependent) may have or had under my/our applicable health plan(s) or health insurance policy(ies) for past, current, or future services rendered.   This assignment includes, but is not limited to, a designation . . . to pursue any and all remedies to which I/we may be entitled, including the use of legal action against the health plan or insurer or in response to legal action by any such health plan or insurer. This assignment and designation remains in effect unless revoked in writing, and a photocopy is to be considered as valid and enforceable as the original.
>
> I understand and agree that (regardless of whatever health insurance or medical benefits I have), I am ultimately responsible to pay Raymond A. Semente D.C. the balance on my account for any professional services rendered and for any supplies, tests, or any Chiropractic services provided.

---

[3]    Dr. Raymond A. Semente, D.C. "is the owner and sole shareholder of Plaintiff." (Pl. 56.1 Stmt. ¶ 2).

(Ex. I at Suffolk-831 [DE 117-9] to Decl. of Rachel Kramer ("Kramer Decl.") [DE 117]; Ex. 1 at Suffolk-2131 to Empire Letter in Resp. to Order to Show Cause ("Empire OTSC Resp.") [DE 130]; *see* Tr. of Dep. of Raymond Semente, D.C. at 137:8–138:11("Semente Dep."), Ex. 3 [DE 115-6] to Decl. of Harold J. Levy ("Levy Decl.") [DE 115-2]).  In this decision, the Court refers to these as the "benefits assignments."

The other assignment, titled "Assignment of Causes of Action and Right to Pursue Litigation on Behalf Health Plan Employee Members and Dependents," grants Plaintiff the right to prosecute lawsuits "on [its patients] behalf" should Defendants deny, either in full or in part, reimbursement for the chiropractic and related medical services provided:

> I hereby assign to Dr. Raymond A. Semente, D.C., P.C. any and all legal causes of action and the right to commence and pursue a lawsuit on my behalf and/or on behalf of the employee member and/or all covered persons or dependents under the group health plan issued by the County of Suffolk, New York to pursue payment to me or the employee member for health plan claims that have been denied or partially unpaid by the health plan and/or its administrator, Empire Blue Cross Blue Shield, for services rendered to me and/or my dependents or the covered employee under the health plan.  I hereby authorize such lawsuit to be commenced and pursued against the County of Suffolk and/or any of its subdivisions and/or the Employee Medical Health Plan of Suffolk County and Empire Blue Cross Blue Shield.

(Ex. K [DE 116-12] to Decl. of Hope Senzer Gabor ("Gabor Decl.") [DE 116-1]; Pl.'s Mem. of Law in Supp. of its Mot. for Recons. and Reargument at 1–2 ("Pl. Recons.") [DE 122-1] (quoting Compl. ¶ 84 [DE 115-4]); *see* SJ Order at 3–4.  In this decision, the Court refers to these as the "litigation assignments."

Since October 2013, Defendants have allegedly refused to render payment for treatments from Plaintiff.  (Pl.'s Opening Mem. in Supp. of its Mot. of Summ. J. at 1–

2 ("Pl. Mem.") [DE 115-33]; *see also* Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss at 2–4 ("MTD Order") [DE 48]).[4]  Plaintiff purports to sue "on behalf of his patients to recover money (benefits) due to its patients but wrongfully withheld by Empire and Suffolk."  (Pl. Recons. at 1 (emphasis removed)).

## II.   The Summary Judgment Order

Plaintiff moved for summary judgment on January 28, 2019.  [DE 115].  Before it could decide the motion, the Court was asked "to issue an order indicating that [the Court] will handle this case to its conclusion should [a] settlement [between Plaintiff, Empire, and Verizon] come about, rather than dismiss what would then be a solely state-based action, without prejudice to it being pursued in a state court."  (*Id.*; *see also* [DE 103, 106, 107, 108]).  On May 31, 2019, the Court declined this request for "an advisory opinion on hypothetical facts."  [DE 110 at 4].

Even so, Plaintiff, Empire, and Verizon settled their dispute.  (SJ Order at 2).  With the federal claims dismissed, the sole basis for the Court's subject-matter jurisdiction was (and remains) its exercise of supplemental jurisdiction over the New York state contract law claims against Suffolk.[5]

The Summary Judgment Order began by re-examining Plaintiff's standing.  (SJ Order at 8–9).  Previously, the Court had held that the plans' anti-assignment

---

[4]      The Order on the Motion to Dismiss was published at *Robert A. Semente, D.C., P.C. v. Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117 (E.D.N.Y. 2015).

[5]      Plaintiff's surviving breach of contract claim against Suffolk implicates Suffolk's crossclaim against Empire; Empire remains in the case as a third-party defendant.  (SJ Order at 2 n.1).

provisions were unenforceable under New York law because they "did not explicitly state that any assignments would be void." (SJ Order at 6; MTD Order at 6–9). In their briefing, Empire and Suffolk re-raised the issue and presented the Court with several cases, including *Angstadt v. Empire Healthcare HMO, Inc.*, 2017 WL 10844692 (E.D.N.Y. Mar. 16, 2017), applying New York law to the same anti-assignment provision at issue here. (SJ Order at 6–7). The case law reflected a consensus in holding the provision enforceable and depriving the assignee of standing. (*Id.* at 8–9). Accordingly, the Court then denied summary judgment in Plaintiff's favor and dismissed Plaintiff's claims against Suffolk for lack of standing. (*Id.*). Eleven days later, Plaintiff moved for reconsideration of the Order.[6]

## III.   Interim Filings

Plaintiff's arguments for reconsideration prompted the Court to issue an Order to Show Cause ("OTSC") on January 8, 2021. [DE 128]. Plaintiff contends the anti-assignment provisions are inapplicable as Plaintiff was assigned solely a "cause of action" without any interest in the proceeds thereof, such that "[a]ny recovery from this litigation will go *directly* to the" non-party patient assignors and not initially to the Plaintiff assignee. (Pl. Recons. at 5–6, 13 (emphasis added)). With the recovery in hand, a patient would then voluntarily repay Plaintiff (because he or she is

---

[6]    Plaintiff has filed a Notice of Appeal regarding the Order. [DE 124]. The appeal is stayed pending a decision on this reconsideration motion. Initial Notice of Stay of Appeal, *Raymond A. Semente D.C., P.C. v. Empire Healthchoice Assurance*, No. 20-1201 (2d. Cir. Apr. 13, 2020) [DE 11].

"extremely loyal")—but if "a patient refuses to pay [Plaintiff], [Plaintiff] may have to sue that patient." (Pl.'s Mem. of Law in Reply ("Pl. Recons. Reply") at 3–4 [DE 127]).

The Court noted "tension" between this position and positions previously asserted by Plaintiff. (OTSC at 4). For example, the Complaint states "Plaintiff is entitled to recover the benefits due under the terms of the [healthcare] plan," "Empire and [Suffolk] are liable to Plaintiff in an amount to be determined by the trier of fact" and "Wherefore, Plaintiff Raymond A. Semente, D.C., P.C., prays that it may have judgment . . . [t]o recover the benefits due under the terms of [healthcare] plans." (*E.g.*, Compl. ¶¶ 113, 124; *id.* Wherefore Clauses ¶¶ A(1), B(1) (capitalization omitted)). Plaintiff also stated in its opening summary judgment brief, "Semente is now owed millions of dollars from Verizon and Suffolk County." (Pl. Mem. at 3.).

The Court also questioned whether New York law permits the litigation assignments. (OTSC at 3–7 (citing *inter alia* N.Y. Jud. Law § 489(1)). The Court then re-raised the issue of its subject-matter jurisdiction, mindful that the exercise of supplemental jurisdiction may not be prudent in light of this issue's complexity and the earlier dismissal of all claims over which the Court had original jurisdiction. (*Id.* at 1–3). The parties' letters in response to the OTSC addressed (i) the Court's subject-matter jurisdiction through its exercise of supplemental jurisdiction, and (ii) Plaintiff's standing under New York law, as an assignee of a cause of action without an interest in any recovery. [DE 129, 130, 131].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), as well as its inherent power, a court may "reconsider a prior decision at any time before entry of final judgment." *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 982 F. Supp. 2d 225, 230 (E.D.N.Y. 2013) (internal quotation marks omitted). In this District, motions for reconsideration or reargument are governed by Local Civil Rule 6.3.

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding district court properly exercised its discretion to reconsider earlier ruling in light of the introduction of additional relevant case law and substantial legislative history); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result." (citation and internal quotation marks omitted)). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *Nat'l Union Fire Ins. Co. v. Stroh*

*Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).  A party may, however, introduce relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortg. Co.*, 2007 WL 140956, at *6 (E.D.N.Y. Jan. 22, 2007).  In the alternative, reconsideration is appropriate if a court "misinterpreted or misapplied" relevant case law in its original decision.  *O'Brien v. Bd. of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001).

## DISCUSSION

Upon considering the parties' arguments in response to the OTSC, the state of the litigation undertaken thus far, and the fairness to the litigants, the Court continues to exercise supplemental jurisdiction over the matter.  *See Ametex Fabrics, Inc. v. Just in Materials, Inc.*, 140 F.3d 101, 105–06 (2d Cir. 1998).

Plaintiff premises its reconsideration motion on a distinction between one assigned right—"the right to commence litigation"—and the right contractually prohibited from assignment—the right to "benefits."  Pl. Recons. at 2–3.  Plaintiff contends the litigation assignments transfer only the "right to bring a legal action and sue Suffolk to recover [patients'] benefits on their behalf *for them*."  Pl. Recons. at 11–12 (emphasis in original).  In other words, the patients gave Plaintiff "a cause of action" in isolation, separate from and without any interest in the proceeds thereof, such that "[a]ny recovery from th[e] litigation will go *directly* to the" non-party assignors (patients) and not initially to the Plaintiff assignee. Pl. Recons. at 5–6, 13 (emphasis added).  As the anti-assignment provisions forbid assigning "benefits,"

Plaintiff asserts, they do not thereby prohibit assigning "rights, duties *or causes of action*." *Id.* at 11–12, 17 (emphasis in original). The thrust of Plaintiff's distinction is that the "anti-assignment clause is simply not implicated in the instant action" and thus cannot deprive Plaintiff of standing. *Id.* at 13.

This distinction, Plaintiff contends, separates the case at hand from *Angstadt v. Empire Healthcare HMO, Inc.*, 2017 WL 10844692 (E.D.N.Y. Mar. 16, 2017), *adopting as modified report and recommendation*, 2017 WL 10844693 (E.D.N.Y. Jan. 6, 2017)—so much so that the Court's reliance thereon was erroneous. Pl. Recons. at 4–7; *see* SJ Order at 6–7.

Like here, *Angstadt* involved allegations that a healthcare plan administrator failed to fully reimburse out-of-network healthcare providers for medical services provided to members covered by the plan. 2017 WL 10844693, at *1–2. In the course of treatment, the *Angstadt* patients assigned the providers "all rights, title and interest in benefits payable for services rendered by the [providers]." *Id.* But their plan contained an anti-assignment provision: "Note: Assignment of benefits to a non-network provider is not permitted" – fundamentally the same as the provisions here. 2017 WL 10844692, at *7. On a motion to dismiss, the Honorable Sandra J. Feuerstein analyzed New York law and held that this provision was sufficiently clear and definite to nullify the patients' assignments. *Id.* at *7–8. Without valid assignments, the providers had no standing and their case was dismissed. *Id.*

Plaintiff juxtaposes the breadth of the *Angstadt* patients' assignments ("all rights, title and interest in benefits") with the narrower litigation assignments at

hand ("only a right to sue"). Pl. Recons. at 4–5, 17. Unlike in *Angstadt*, Plaintiff argues, "[n]o *benefits* were ever assigned" here. *Id.* (emphasis partially removed). The documentary evidence belies this assertion.

## I.    The Benefits Assignments

Despite Plaintiff's insistence to the contrary, the evidence proffered by Defendants shows that Plaintiff *was*, in fact, assigned benefits. *Compare* Ex. I at Suffolk-831 to Kramer Decl. (assigning "all rights to payment and benefits"), *and* Ex. 1 at Suffolk-2131 to Empire OTSC Resp. (same), *with* Pl. Recons. at 1–2 ("In the case at bar, however, no *benefits* were ever assigned." (emphasis in original)), *and id.* at 4–5, 7, 10, 11, 13, 17, *and* Pl. Recons. Reply at 1, 2, 4–9. Plaintiff obtained an "assignment of health plan benefits," whose unambiguous terms reveal patients "assign[ed] directly to Raymond A. Semente D.C. all rights to payment and benefits and all legal and other health plan, ERISA plan, or insurance contract rights." Ex. I at Suffolk-831 to Kramer Decl.; Ex. 1 at Suffolk-2131 to Empire OTSC Resp. Nothing suggests the benefits assignments were ever revoked, and the litigation assignments do not purport to do so. *See* Ex. K to Gabor Decl.

Dr. Semente testified that the litigation assignments supplemented the benefits assignment as a precautionary measure prior to the commencement of formal litigation:

Q.    You testified earlier that you would receive assignments from all your patients. Do you recall that?

A.    Yes.

Q.    And that's done typically on the first day or the first visit that they come to, right?

A.    Not always.

Q.    Okay.  Often if they're not done on the first day – well, the assignments, even if they're done later on, are retroactive, right?

A.    Yes.

. . .

Q.    And I think are -- am I correct that there are really at least two different kinds of assignments?  One is -- which I think this first page is a good example, 145 -- an assignment authorizing you to seek the payment of benefits on behalf of the patient, right?

A.    I had level one appeal advice that, yes, that was so by this form.[7]

Q.    And then there's another assignment that has to do with assigning to you the right to pursue litigation on behalf of the patient, right?

A.    Yes.

. . .

Q.    So I thought since this is not an assignment to pursue claims, this is an assignment to pursue litigation, so I thought maybe, you know, the lawsuit was about to be filed and you were making sure that everyone was going to be subject of the lawsuit had actually signed one of these forms.

A.    I had level one appeal counsel before any lawsuit was filed.  And one of the recommendations was I had to have a proper assignment, so I had to turn around and contact patients that had been to the office, as best as I can recollect, and I

---

[7]    To the extent Dr. Semente's testimony suggests the benefits assignment are limited to administrative "level one appeals," their plain text provides otherwise. *E.g.*, Ex. I at Suffolk-831 to Kramer Decl. ("I hereby assign directly to Raymond A. Semente, D.C. all rights to payment and benefits . . . .  This assignment includes, but is not limited to, a designation . . . to pursue any and all remedies to which I/we may be entitled, *including the use of legal action* against the health plan or insurer . . . ." (emphasis added)).

had to send them the assignment so they could sign it and send it back to us.

So I think the retroactive assignment is what this means, but I'm not an attorney, so they had to be signed by patients under care at that time and preceded counsel.

Q.    That all makes sense.  Before you start a lawsuit on behalf of patients, you wanted to make sure you had [the] right to do that on behalf of all the patients, right?

A.    Yes.

Semente Dep. at 137:8–18, 137:24–138:11, 142:24–143:21.  Plaintiff's litigation assignments merely reaffirmed the rights already obtained through the benefits assignments as a prophylactic measure in anticipation of filing suit.  Indeed, the rights transferred through benefits assignments subsume those transferred through the litigation assignments; the benefits assignments transfer the same rights and more.  *Compare* Ex. K to Gabor Decl. (assigning "any and all legal causes of action and the right to commence and pursue a lawsuit on [the patient's] behalf"), *with* Ex. I at Suffolk-831 to Kramer Decl. (assigning the right "to pursue any and all remedies to which [the patient] may be entitled, including the use of legal action against the health plan or insurer").

Plaintiff's contentions on reconsideration ignore the benefits assignments. Plaintiff may be correct that the litigation assignments' "plain language" transfers "no benefits," *e.g.*, Pl. Recons. Reply at 4, but the point is hollow because the benefits assignments' does.  *E.g.*, Ex. I at Suffolk-831 to Kramer Decl.  Plaintiff's position relies on "[t]he benefits at issue in this litigation [remaining] the property of the patients, in whose behalf Plaintiff sues."  Pl. Recons. Reply at 4.  Already precarious

in theory,[8] this position fully capsizes upon discovery of evidence showing Plaintiff was assigned those benefits.

To the extent Plaintiff asserts that Suffolk waived argument on this issue by "previously admit[ting]" that the assignments involve only "the rights to commence an action, and not an assignment of benefits," the Court is not persuaded. Pl. Recons. at 13 (citing Suffolk's Opening Mem. in Supp. of Mot. to Dismiss [DE 41-3]). Suffolk's argument came in support of its Motion to Dismiss and was therefore limited to the allegations in the Complaint. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) ("We do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim."). The Complaint alleged that Plaintiff obtained litigation assignments from patients with healthcare plans administered by Suffolk – different from the allegations that Plaintiff obtained benefits assignments from patients with plans administered by Verizon. Compl. ¶¶ 28, 84. The evidence nevertheless shows Plaintiff *did* obtain benefits assignments from patients with healthcare plans administered by Suffolk. For example, the patient whose materials comprise Exhibit I to the Kramer Declaration (1) assigned benefits, Ex. I at Suffolk-831 to Kramer Decl., (2) from a healthcare plan administered by Suffolk, Ex. I at Suffolk-826 to *id.* (denying, on Suffolk County EMHP letterhead, a reimbursement appeal for chiropractic services

---

[8]      *See* Discussion Section III *infra*. In the OTSC, the Court raised a concern that the litigation assignments may violate New York Judiciary Law § 489(1), the statutory codification of the common law prohibition against champerty. It is unnecessary to reach this issue because Plaintiff has no standing regardless.

provided by Dr. Raymond Semente, D.C. to a patient belonging to the "Employee Medical Health Plan of Suffolk County").

As such, the Court adheres to its Order in holding that the anti-assignment provisions—prohibiting assignments of benefits—operate with full force here to deprive Plaintiff of standing.

## II.     Enforceability of the Anti-Assignment Provisions

New York law construes anti-assignment clauses narrowly. *Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, 2019 WL 1950137, at *10 (S.D.N.Y. Apr. 17, 2019). The Second Circuit has held that, "[u]nder New York law, only *express* limitations on assignability are enforceable." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850 (2d Cir. 1997) (emphasis in original). The *Angstadt* Court held an anti-assignment provision, identical to the one here, "sufficiently clear to 'void' any assignment, even an assignment of benefits." 2017 WL 10844692, at *7–8. Plaintiff challenges the holding's accuracy and this Court's adoption thereof. Pl. Recons. at 5 & n.2, 7, 15.

The New York state case *Cole v. Metropolitan Life Insurance* particularly impels a finding of enforceability. 708 N.Y.S.2d 789, 273 A.D.3d 832 (N.Y. App. Div., 4th Dep't 2000)). There, the New York Appellate Division, Fourth Department enforced an identical anti-assignment provision—"Assignment of benefits to a Non-Participating Provider is not permitted"—relying on, and citing to, the legal principle that Plaintiff contends supports the provision's non-enforceability. 708 N.Y.S.2d at 790 (holding the provision satisfied New York law's requirement "clear,

definite and appropriate language declaring the invalidity of such assignments"); *see* Pl. Recons. at 5 & n.2, 10, 13–15; Pl. Recons. Reply at 8–9.

The *American Medical Association v. United Healthcare Corporation* Court invoked *Cole* to reject the same argument Plaintiff presents: that the anti-assignment provision fails "to use the term 'void'" and thus does "not operate as an anti-assignment clause." 2001 WL 863561, at *12 (S.D.N.Y. July 31, 2001). Considering New York law, the Southern District of New York agreed the provision contained sufficiently clear language to invalidate assignments in contravention thereof. *Id.*

The *Angstadt* Court agreed with the reasoning in these two cases to find a "virtually identical" anti-assignment provision enforceable under New York law. 2017 WL 10844692, at *8 (analyzing *American Med. Ass'n*, 2001 WL 863561 and *Cole*, 708 N.Y.S.2d 789). In surveying the legal landscape, the *Angstadt* Court noted this Court's MTD Order stood alone in finding the provision unenforceable under New York law, against three cases (*Angstadt* included) reaching the opposite result. *Id.* This Court's Order on Summary Judgment thus restores unanimity to the judicial consensus on this question, and, consensus notwithstanding, properly applies New York law.

Plaintiff also assert, "as a matter of law," the anti-assignment provisions must "explicitly include a preclusion against assigning causes of action," and not benefits generally, in order to apply here. Pl. Recons. at 13 (citing *Pravin Banker*, 109 F.3d at 856). The Second Circuit did not consider New York law so demanding. The *Pravin Banker* defendants contended a letter agreement's express permission to "assign all

or any part of [a party's] interest . . . to any financial institution" worked simultaneously to prohibit all other assignments. *Id.* at 856.  The court rejected this argument, noting the "language fails to restrict the assignment expressly in any way" and does not "limit assignments only to [financial institutions]." *Id.*  When the Second Circuit reiterated New York law as requiring "clear and definite" anti-assignment language, it called for such clauses to be overt and not to be negatively implied from a positive right of assignability. *See id.* (citing *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891 (1952)).

Therefore, the Court respectfully disagrees that *Angstadt* is "incorrectly decided under New York law" and that relying on *Angstadt*'s "holding and rationale . . . was erroneous as a matter of fact and as a matter of law." Pl. Recons. at 13.  The anti-assignment provisions deprive Plaintiff of standing.

## III.   The Litigation Assignments are Powers of Attorney

Ultimately, the benefits assignments and the anti-assignment provisions' enforceability matter little.  Even if there were only litigation assignments and the anti-assignment provisions did not apply, Plaintiff still does not have standing.  The litigation assignments are naked powers of attorney, which New York law has long held insufficient to confer standing upon an assignee.

New York law generally considers causes of action "freely assignable." *Titus v. Wallick,* 306 U.S. 282, 288–89, 59 S.Ct. 557, 561, 83 L.Ed. 653 (1939).  A proper assignment of a cause of action requires "a completed transfer of the entire interest of the assignor in the particular subject of assignment." *Coastal Comm. Corp. v.*

*Samuel Kosoff & Sons, Inc.*, 199 N.Y.S.2d 852, 856, 10 A.D.2d 372, 376 (N.Y. App. Div., 4th Dep't 1960).  Going all the way back to the mid-1800s, the New York Court of Appeals has continually affirmed:

> If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest, whether the assignment was with or without consideration, and notwithstanding the assignee may have taken it subject to all equities between the assignor and third persons.

*Cummings v. Morris*, 25 N.Y. 625, 627, 11 E.P. Smith 625 (N.Y. 1862).  "In other words, the plaintiff must have some title, legal or equitable, to the thing assigned." *Spencer v. Standard Chems. & Metals Corp.*, 237 N.Y. 479, 480–81, 143 N.E. 651, 652 (N.Y. 1924) (citing *Hays v. Hathorn*, 74 N.Y. 486, 29 Sickels 486 (N.Y. 1878)).

In sum, foundational New York law deems an assignee to a cause in action the real party in interest only if it has "beneficial interest," *i.e.*, legal or equitable title, in the subject of the cause in action.  *Considerant v. Brisbane*, 22 N.Y. 389, 394, 8 E.P. Smith 389 (N.Y. 1860); *Cummings*, 25 N.Y. at 627; *Hays*, 74 N.Y. at 490; *Spencer*, 237 N.Y. at 480–82; *Catrakis v. Jaris*, 114 N.Y.S.2d 225, 228, 280 A.D. 414, 418, (N.Y. App. Div., 1st Dep't 1952) ("[I]n order to bring an action to collect the debt, it is necessary that the plaintiff shall own the account receivable."); *Coastal Comm. Corp.*, 199 N.Y.S.2d at 856; *Sardanis v. Sumitomo Corp.*, 723 N.Y.S.2d 466, 469, 282 A.D.2d 322, 324 (N.Y. App. Div., 1st Dep't 2001) ("To be a real party in interest, an assignee 'must have some title, legal or equitable, to the thing assigned.'"); *see also Titus*, 306 U.S. at 289; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997); *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 285

(S.D.N.Y. 2017) ("In New York, causes of action generally are freely assignable. . . .
A valid assignment divests the assignor of all interest in (and control over) the suit,
rendering the assignee the sole party in interest." (footnotes omitted)); *NYTDA, Inc.
v. City of New York*, 2013 WL 12358241, at *7 (E.D.N.Y. Aug. 28, 2013); *U.S. ex rel.
Wolther v. New Hampshire Fire Ins. Co.*, 173 F. Supp. 529, 537 (E.D.N.Y. 1959)
("Where the transfer of a chose in action appears on its face to be an absolute
assignment and there is no recital that the transfer is merely for purposes of suit[,]
the assignee is clearly a proper party in interest to bring suit on the chose in action.");
*Clark v. Chase Nat'l Bank of City of New York*, 45 F. Supp. 820, 822 (S.D.N.Y. 1942)
("[The contract terms] clearly indicate that legal title in the bonds remains with the
bondholders and was not assigned to the Committee.  All the Committee has is a
power of attorney to institute an action. . . .  It has been held that a power of attorney,
without an assignment, is not sufficient to meet the requirements for a 'real party in
interest' under [New York law].").

A proper assignment of a cause of action starkly contrasts with a power of
attorney.  "A provision by which one person grants another the power to sue on and
collect on a claim confers on the grantee a power of attorney with respect to that
claim." *Advanced Magnetics, Inc.*, 106 F.3d at 17–18 (citing *Spencer*, 237 N.Y. 479).
"[A] power of attorney to sue, standing alone, *does not* under the New York law
operate as an assignment to vest the attorney with such title or interest as will enable
him to maintain the suit in his own name." *Titus*, 306 U.S. at 289 (emphasis added)
(citing *Spencer*, 237 N.Y. 479); *Kearney v. Cavalry Portfolio Servs., LLC*, 2014 WL

3778746, at *6–8 (E.D.N.Y. July 31, 2014) ("New York State law provides that the mere transfer of a power of attorney does not make the recipient the real party in interest or grant standing to file suit."); *NYTDA, Inc.*, 2013 WL 12358241, at *7 ("Power of attorney is insufficient to confer standing because the holder does not have an interest such that he suffers an injury-in-fact, as required by Article III standing."); *Vandegrift Forwarding Co. v. Hartford Fire Ins. Co.*, 2009 WL 928337, at *5 (E.D.N.Y. Mar. 31, 2009) ("New York law is clear that a power of attorney, without an assignment, does not authorize the attorney in fact to bring an action in his own name.").

    *Spencer v. Standard Chemicals & Metals Corporation*, a 1924 New York Court of Appeals opinion, and *Advanced Magnetics, Inc. v. Bayfront Partners, Inc*, a 1997 Second Circuit opinion analyzing New York law, help illustrate the distinction. *Spencer* involved an "cause of action [that] had been duly assigned to the plaintiff," Harold R. Spencer.  The agreement transferred the:

> power to commence or prosecute any suit or action or other legal proceedings for the recovery of damages, . . . debts, demands, choses in action, causes or things whatsoever in the United States of America due or to become due to me and to prosecute and follow and discontinue the same if he shall deem it proper and for me and in my or his name to take all steps and remedies necessary and proper for the recovery . . . of any . . . sum or sums of money, choses in action or other things whatsoever that is, are or shall be by my said attorney thought to be due . . . to me in my right or otherwise, and also for me and in my name to compromise, settle, and adjust all causes.

237 N.Y. at 481 (ellipses in original) (internal quotation marks omitted) (quoting terms of the agreement).  *Id.*  The New York Court of Appeals deemed this "entirely unavailing" to confer standing upon Spencer.  *See id.*  Under the plain terms of the

agreement, Spencer had "[n]o legal title to the claim against the defendant" nor "any equitable interest therein." *Id.* at 482.  The agreement merely enabled Spencer "to collect what may be due to [the assignor] solely for the [assignor's] benefit"—it was not a proper assignment but a mere power of attorney.  *Id.* at 481–82.

In *Advanced Magnetics*, five shareholders transferred their causes of action to AMI who then brought suit in its name but on their behalf.  106 F.3d at 13.  The five shareholders entered the following agreement with AMI:

> the assignors do hereby assign to AMI the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings at law or in equity in any court of competent jurisdiction which arise from the above-[described] claims.

*Id.* at 14 (alteration in original).  The district court dismissed AMI suit because "the purported assignments were ineffective to transfer ownership of the claims to AMI and hence AMI lacked standing to assert those claims." *Id.*  The district court quoted *Cummings v. Morris*, 25 N.Y. 625 (N.Y. 1862), for the "generally accepted principle that in order to be effective, an assignment to transfer a chose in action must manifest an intent to divest the assignor of all control and right to his claim, thereby empowering the assignee to control the cause of action *and* to receive its fruits." *Id.* (quoting the district court's added emphasis).  The Second Circuit reviewed the terms of the agreements and held, "Plainly, none of these provisions constituted assignments to AMI of ownership of the shareholders' claims; nor did any other part of the proffered writings indicate that the shareholders were transferring title or ownership." *Id.* at 18.  The *Advanced Magnetics* Court thus affirmed the dismissal

as the agreements "were insufficient to permit AMI to sue on those claims in its name." *Id.*

The litigation assignments at issue here mirror the agreements in *Spencer* and *Advanced Magnetics*. *See* Ex. K to Gabor Decl. They do not purport to grant Plaintiff legal or equitable title in the claims. Plaintiff expressly disclaims such title. *E.g.* Pl. Recons. at 4–5; Pl. Recons. Reply at 1–2 ("Here, the patients *did not* transfer their "rights, title and interest in benefits[.]" (emphasis in original)). The patients (assignors) cannot be said to have divested "*all* control and right to the cause of action," even though Plaintiff prosecutes the action, because Plaintiff will not receive its fruits. Indeed, Plaintiff openly disavows any expectation of recovery. *E.g.*, Pl. Recons. at 5, 13 ("Any recovery from this litigation will go directly to the patients – not to Plaintiff."); Pl. Recons. Reply at 1, 4. The litigation assignments are powers of attorney; they do not confer standing upon Plaintiff.

In its response to the OTSC, Plaintiff misplaces reliance on *Titus v. Wallick,* 306 U.S. 282 (1939), and *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008). *See* Pl.'s Letter in Resp. to Order to Show Cause at 5 ("Pl. OTSC Resp.") [DE 131]. Each of these cases explicitly reference a transfer of "right, title, and interest" in the claim – *i.e.*, a proper assignment, not a mere power of attorney. *Titus*, 306 U.S. at 286 ("[The assignment] states that Walter Titus 'does hereby sell, assign, transfer and set over' to petitioner 'all his right, title and interest' in the claim."); *Sprint*, 554 U.S. at 272 ("Each payphone operator . . . 'assigns, transfers and sets over to [the plaintiff] for purposes of collection all rights, title and interest of the

[payphone operator] in the [payphone operator's] claims, demands or causes of action.'"). Specifically, these cases reflect "that there had been a proper transfer of ownership." *See Advanced Magnetics*, 106 F.3d at 18.

It is this transfer of ownership that gives rise to the nuance raised in the OTSC – namely, that in *Sprint*, the Supreme Court anchored its decision on the assignees, and not the assignors, directly receiving the proceeds of the assigned causes of action. *Compare Sprint*, 554 U.S. at 287 ("And if the [assignees] prevail in this litigation, [defendant] would write a check to the [assignees] for the amount of dial-around compensation owed. What does it matter what the [assignees] do with the money afterward?"), *with* Pl. Recons. Reply at 3–4 (contending that recovery going directly to the assignors is non-controversial because "Suffolk routinely and historically has issued checks directly to its members—[Plaintiff's assignors]—and not directly to [Plaintiff]"). Plaintiff submits this is "a distinction without a difference." Pl. OTSC Resp. at 5. Alas, it makes all the difference. "There is an important distinction between simply" contracting for a power of attorney and assigning a claim on the promise to remit proceeds: "[t]he latter confers a property right (which creditors might attach); the former does not." *See Sprint*, 554 U.S. at 289. As explained by the Second Circuit,

> In our view, *Sprint* makes clear that the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim. . . . *Sprint* therefore implicitly supports the holding of *Advanced Magnetics* that a mere power-of-attorney—*i.e.,* an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor, *see Black's Law Dictionary* 1209 (8th ed. 2004)—does not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim.

> By contrast, an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an "injury-in-fact."

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008).

As to *Titus*, the Second Circuit has held that it "stands for the proposition that the addition of an accounting provision [*i.e.*, a 'separate provision for the assignor to receive a share of the proceeds recovered on the assigned claim'] does not negate the [assignor's] manifestation of his intent to transfer *ownership* of the claim, not that such a manifestation is unnecessary." *Advanced Magnetics*, 106 F.3d at 18 (alteration and emphasis added). The *Titus* passage quoted by Plaintiff removes its broader context, which recognized that a power of attorney does not confer standing. *See* Pl. OTSC Resp. at 5; *see also Titus*, 306 U.S. at 289. Moreover the passage is a double-edged sword: if "any form of assignment which purports to assign or transfer a chose in action" truly confers "title or ownership as will enable [Plaintiff] to sue," then the litigation assignments must have actually assigned *benefits*, which belong to "entire interest of the assignor[s] in the particular subject of assignment." *See Coastal Comm. Corp.*, 199 N.Y.S.2d at 856; *but see* Pl. Recons. Reply at 2 ("[T]he benefits remain the property of the patients, and plaintiff clearly sued on behalf of his patients, to collect benefits due them."). As analyzed above, the anti-assignment provisions would then strip Plaintiff of standing.

In conclusion, even if it had only litigation assignments from its patients, Plaintiff would still lack standing under New York law.

## CONCLUSION

For the reasons discussed above, the Court GRANTS reconsideration of its Order dismissing the case for lack of standing.  The Court nevertheless adheres to its Order, as Plaintiff was assigned benefits in violation of the health plans' enforceable anti-assignment provisions, and, even if Plaintiff was assigned solely "causes of action," Plaintiff would still lack standing under New York law.  Accordingly, the case remains DISMISSED.

**SO ORDERED.**

Dated: Central Islip, New York                    s/ Denis R. Hurley
       March 2, 2021                              Denis R. Hurley
                                         United States District Judge